THE PEOPLE, *ex rel.* Sidney H. Stuart, *vs.* FRANCIS W. ED-
MONDS, chamberlain of the city of New York.

Police justices of the city and county of New York are county officers; and the
services rendered by them are rendered to the county, and are chargeable to
the county, as contingencies.

A mandamus is the appropriate remedy to compel the county treasurer to pay,
when he refuses to pay, a demand which the board of supervisors have legally
audited or allowed, or directed to be paid.

By the act of July 11, 1851, the board of supervisors of the city and county of
New York were authorized to increase the salaries of the police justices of the
county of New York; and it was provided that the salaries to be thus fixed
should not be increased or diminished during the term for which such police
justices should be elected or appointed. In pursuance of this authority the
board of supervisors, by a resolution of January 2, 1852, fixed the salaries of
the police justices at $2000 per annum, to be in full for services rendered by
them on Sundays, as well as for other extra duties. Subsequently, by a reso-
lution of December 29, 1853, the board of supervisors ordered the police just-
ices to be paid for extra services, at the rate of one-sixth of the compensation
then received by them. *Held*, that the board having fixed the salaries by the
resolution of Jan. 2, 1852, could not by a subsequent resolution, increase or
diminish the salaries of the police justices then in office, during the continuance
of their term of office. And that consequently the resolution of December 29,
1853, was void.

APPEAL from an order made at a special term, refusing to
grant a mandamus against the defendant. The material facts
are stated in the following opinion, delivered at the special term.

CLERKE, J. "This is an application made on behalf of
Sidney H. Stuart, one of the police justices of the city of New
York, for a peremptory mandamus, commanding the chamberlain,
in his capacity of treasurer of the county, ex officio, to pay him
the sum of $666.66, for a compensation directed to be paid to
him by the resolution of the board of supervisors of the 27th of
December, 1853, for extra services. The relator was elected one
of the police justices of the city in November, 1851, and entered
upon the duties of his office on the following May, and has ever
since continued to discharge those duties. The question to be
considered is whether the board of supervisors had the power to
make this allowance for extra services.

The People *v.* Edmonds.

Under the general power, which they possess by common law and by statute, they can allow all amounts chargeable against the county, (1 *R. S.* 367, § 4,) which comprises the prosecution and conviction of criminals, and all contingent expenses necessarily incurred for the use and benefit of the county. The services alleged and admitted in the present case, have been rendered, in my opinion, to the county as contradistinguished from the city in its municipal capacity. The office of police justice is not of municipal but of common law origin; it is entirely independent of the charter, and if we were reduced by a repeal of it to the status of a mere county, this office would still essentially survive, exercising duties always belonging, according to the general law of the land, to justices of the peace. The legislature, to be sure, has distributed the duties of the justices, as far as this city is concerned, and has directed that the civil and criminal business should be discharged by different classes; one class to be confined exclusively to civil and the other to criminal business; but this is merely a convenient division of labor; an arrangement which may be adopted with equal benefit whenever the population or circumstances of any locality render it desirable, whether possessing, or not, a municipal charter.

Besides, even if this office were purely municipal, and entirely coexistent with and dependent upon the charter, still, if the services were rendered to the county, the board of supervisors had authority to grant compensation for those services, or for county services rendered by any individual, whatever may be his occupation, office or condition. The services which they intended to compensate by the resolution of 1853, were rendered by the police justices on Sundays, which, by the common law, no public officer is under any obligation to perform, but which, in a crowded and heterogeneous population, are absolutely necessary to prevent rioting and disorder, and the escape of criminals. The board of supervisors, then, having the general authority to order this additional compensation, the only question that remains, in this stage of the inquiry, is whether they have been restricted or prohibited from doing so by the paramount authority of the

state legislature, or in other words, has their general power in this respect been curtailed ?

In chapter 153, Laws of 1848, page 249, in the 9th section of an act in relation to justices and police courts in the city of New York, passed March 30th, 1848, it is provided " that the justices shall receive such an annual compensation for their services as shall be fixed by the *common council,* which shall be in lieu of all fees and other perquisites, and shall not be increased or diminished during their continuance in office, and shall receive no other fees or perquisites whatever by virtue of their office." Pursuant probably to this act, the *board of supervisors,* by a resolution of the 23d April, 1851, allowed the police justices, for services rendered by them on Sundays, from the 9th day of May, 1848, to the date of the resolution, " at the same rate of compensation per diem as the salaries then paid them for services performed in the ordiary business and legal days of the week ;" that is, they increased the salaries one-sixth for those additional services, and this they had undoubtedly the power to do.

By an act of the legislature, passed July 11th, 1851, section 6, this 9th section of the law of 1848, above referred to, was repealed, and for the increase of duties created by this act, (including the services rendered on Sundays) the board of supervisors are authorized to increase the salary of the justices and clerks elected and appointed under the act of 1848 ; and the salaries to be thus fixed are not to be increased or diminished during the term for which they are elected or appointed.

According to this act, then, the board of supervisors, while authorized to increase the salaries of officers *elected and appointed under the act of* 1848, during the term for which they are elected and appointed, are absolutely prohibited, after thus increasing and fixing, from *again* increasing or diminishing their salaries. This prohibition applies to the police as well as to the civil justices, for both are equally appointed and elected under that act; the 4th, 5th, 6th and 10th sections applying especially to the civil justices, and the 7th and 8th to the police justices ; the other sections applying in common to both. Pursuant to the power given by the act of 1851, the board of super-

The People *v.* Edmonds.

visors, by a resolution of January 2d, 1852, fixed the salaries of the police and civil justices at $2000 per annum, "to be in full for services rendered by them on Sundays as well as other duties assigned them." As we have observed, they had specific power to do this by the act of 1851; but, having done so, they are positively restrained, by the same act and section, from *making any further increase during the continuance of the term,* for which the incumbent has been elected. The relator was elected in November, 1851, his term of office to commence the following May, for four years. How then, in the face of the statute of 1851, could the board of supervisors pass the resolution of December 29th, 1853, ordering the police justices to be paid for extra services at the rate of one-sixth of the compensation they now receive; contemplating evidently extra compensation for the services rendered by them on Sundays; although by resolutions of January, 1852, it is expressly specified, that the salary of $2000 per annum is to be in full for services rendered by them on Sundays?

This resolution appears to me to be in contravention and violation of the act of 1851; and although, under their general powers, as I have already shown, the board of supervisors had full power to allow this remuneration, yet as the supreme legislative authority has thus limited those powers, the resolution of 1853 is null and void. Having arrived at this conclusion, it is unnecessary to consider the points taken by the counsel of the defendant, whether the amount claimed was payable by the comptroller or chamberlain, and consequently whether a mandamus could be granted against the latter, even if the relator were entitled to the amount which he demands.

It was mentioned on the argument, in support of the relator's claim, that the police justices were entitled to a larger salary than the civil justices, and that both classes of officers, by the resolution of 1852, being placed on an equality in this respect, allowing to both, without distinction, $2000 per annum, the resolution of 1853, giving an increase to the former, was equitable, and should be favorably entertained by the court. I readily admit that, both in the nature and amount of their labor, the duties

of the police justices are much more onerous and severe than those devolving on the justices of the inferior civil courts. They have to attend at unseasonable hours, and with little intermission for relaxation or repose; they are even excluded from the sacred rest of the sabbath; they are constrained to witness day after day scenes most revolting to humanity; scenes calculated to make the hardest heart mourn over the destitution and moral ruin of our race; they have human nature perpetually and practically before them, in its vilest and rudest aspects; and the actual physical and mental toil which those duties impose must be seriously detrimental to their health. But, in my opinion, this inequality and inadequacy of remuneration can only be corrected by the intervention of the legislature, by the repeal or amendment of the act of 1851.

The application must be denied."

From this decision the relator appealed.

*J. W. Edmonds,* for the relator.

*R. J. Dillon,* for the defendants.

*By the Court,* MORRIS, J.    Police justices of the city and county of New York are county officers. The services rendered by them are rendered for the county, and are chargeable to the county as contingencies. The salaries of police justices are (by an act of the legislature) to be established by the board of supervisors. The city chamberlain is, *ex officio,* county treasurer, and it is his duty, and not that of the comptroller of the city, to pay all county charges legally audited and allowed, or directed to be paid, by the board of supervisors.

A mandamus is the appropriate remedy to compel the county treasurer to pay, when he refuses to pay, a demand which the board of supervisors have legally audited and allowed or directed to be paid.

The only remaining question is, whether the resolution of the board of supervisors, of the 29th of December, 1853, is or is not legal.

By the act of the legislature, of the 11th of July, 1851 the board of supervisors of the city and county of New York are authorized to increase the salaries of the police justices of the county of New York, which is to be in full for services on Sunday, and for all extra services, and it is provided that the salaries to be thus fixed shall not be increased or diminished during the term for which such police justices shall be elected or appointed. The resolution of the board of supervisors of the 2d of January, 1852 was a compliance with this act of the legislature ; and the board of supervisors could not legally increase or diminish the salaries of the police justices then in office, during the continuance of the term of office for which they had been elected or appointed. The board of supervisors had no legal power to pass the resolution of the 29th of December, 1853, and the county treasurer was justified in refusing to pay it.

Order of the special term affirmed, with costs.

[NEW YORK GENERAL TERM, September 25, 1854. *Mitchell, Roosevelt* and *Morris,* Justices.]