### The Township of Marathon v. The Township of Oregon.

Where, after the division of a township, the town boards have met and determined the amount of the township indebtedness to be paid by the new township, such amount is a fixed and liquidated demand against such new township, which it it is the duty of its town board to allow, and to issue an order on the township treasurer therefor.°

If such town board refuse to perform this duty, mandamus to compel their action is the proper remedy, and not an action against the township to recover the amount of the demand.

*Heard May 29th. Decided June 9th.*

Error to Lapeer Circuit.

The township of Oregon, by act of the Legislature of 1846, was organized from territory constituting a part of the township of Marathon. In March, 1856, as claimed by the plaintiff, a joint meeting of the township boards of the two towns was had, for the purpose of apportioning the debts of the township of Marathon, at the time of the formation of Oregon therefrom; which meeting found due from the latter township to the former, as its proportion of such indebtedness, $1,483, to recover which this action was brought. Judgment having been rendered for the defendant in the court below, the plaintiff brought error.

The case having been once argued in this court on the merits, a re-argument was ordered by the court on the question, whether the plaintiff had any remedy, except by mandamus, to enforce payment of the amount of the indebtedness of the old town apportioned as due upon the division?

*G. V. N. Lothrop, N. B. Eldredge,* and *M. E. Crofoot,* for plaintiff in error:

1. Mandamus lies generally to compel the performance, by public officers or inferior tribunals, of *ministerial* duties; or of *public duties* plainly enjoined, and the exercise of which are *not discretionary:* — 3 *Mich.* 428; 18 *Pick.* 446; 1 *O. S. R.* 149; 11 *How.* 289; 12 *Pet.* 524; 10 *Pet.* 497; 17 *How.* 230; *Ibid.* 304. And perhaps to correct manifest abuses of discretionary power: — 3 *B. & Ad.* 704; 7 *B. & C.* 692; 3 *Mich.* 475. But the duty must be a clear, legal, and imperative duty: — 3 *Ad. & E.* 425; 25 *Barb.* 73; 1 *Doug. Mich.* 320; 1 *Kern.* 574; 12 *Pet.* 525; 11 *How.* 289; 1 *O. S. R.* 77; 2 *Chand. Wis.* 247. And it will not be granted where there is any other adequate remedy, by action at law: — 2 *Burr.* 1045; 1 *T. R.* 404; 2 *Doug.* 526; 1 *Doug. Mich.* 320; 10 *Johns.* 484; 2 *Cow.* 444; 1 *Wend.* 319; 10 *Wend.* 363; 25 *Wend.* 685; 2 *Hill,* 45; 6 *Hill,* 243; 23 *Vt.* 478. Though it seems it may be allowed as a concurrent remedy where ministerial officers and corporations may be liable to an action on the case for neglect of duty: — 23 *Wend.* 461; 1 *Kern.* 573. But never to enforce mere private rights, or to collect a debt as such, though it may be employed to enforce a ministerial act to aid in the course of such collection, where the law directs a specific mode of collection: — 25 *Barb.* 73; 3 *R. I.* 22.

2. It may safely be assumed that the writ in this case must be asked, either, 1st. Against the town; or, 2d. Against the town board; or, 3d. Against the supervisor.

*Mandamus will not lie against the town.* For to do so

would be to apply the process to the collection of a debt.
The town is the debtor, and it might as well be resorted
to to compel debtors in all cases to pay their debts. The
debt in this case ₒ stands against the township, like any
common debt. No mode for the collection thereof is pro-
vided : — *Comp. Laws*, § 604. The right is to be enforced
by common law remedies.

*Nor will it lie against the town board.* The town board
is not a legal tribunal to which claims *must* be presented
for adjudication. Their action is not necessary to, or bind-
ing on, creditors. The board only represents the town in
the *amicable* settlement of business. Their action or non
action is therefore no part of a suitor's remedy. But the
claim has already been settled by the proper board — the
joint board raised for the special purpose. It was thus fully
and finally made a town charge. It is not within the juris-
diction of the town board, who can neither make it a town
charge nor reject it : — *Comp. Laws*, § 604 ; *Ibid.* § 564.
Nor can the town board raise the money to pay this
debt. When the town neglects or refuses " to vote such
sum or sums as may be necessary to defray the *ordinary
township expenses,*" then the board may raise the requisite
amount : — *Comp. Laws*, § 597. This is all they can do ;
and they will not be commanded to do more : — 15 *Barb.* 607.

*Nor will it lie against the supervisor.* For there is no
law which makes it his plain official duty to include this
claim in his tax assessment. Nay, there is no law which
empowers him to do it. Should he · assume to do so,
his act would he illegal.

The supervisor must have direct warrant, either in some
statute or in the certificate of the action of some compe-
tent body, before he has jurisdiction to assess any tax
whatever : — 5 *Mich.* 182.

Township indebtedness may be collected in two ways:
*First.* By *voluntary* payment, which may be either by the
town board within the limits of their authority, or by vote

of the town at a lawful meeting: — *Comp. Laws*, §§ 495, 564. *Second.* By action at law, or other proper proceeding in the legal tribunals.

After recovery of judgment, the statute expressly restrains the farther prosecution of common law remedies; it withholds execution, and directs that the amount "shall be *levied* and *collected* as other "township charges:— *Comp. Laws*, § 4917. Here, for the first time, is created a plain official duty to levy a tax for a township debt. On the production of a certified copy of a judgment, to the supervisor, he would be required to *levy* it as a part of his assessment. Then, and not till then, is it a tax required by law. And at this stage a mandamus would lie to enforce the performance of this duty.

We have not overlooked a common class of cases found in our own reports and elsewhere, where *mandamus* has been held the appropriate remedy against town and county officers. Cases for the collection of damages awarded in laying out highways, &c., are of this class. In these cases it will be found that the statute expressly directs a mode for the payment of the award. An official or a ministerial duty is created, and it is this duty that the writ is employed to enforce. Such are, with many others, the cases in 2 *Mich.* 187; 5 *Mich.* 223; 5 *Cow.* 292; 10 *Wend.* 363; 16 *Wend.* 520; 4 *Barb.* 64; 20 *Barb.* 295; 4 *Zab.* 54; 22 *Pick.* 264; 3 *Wis.* 333.

3. Even if mandamus might be a 'lawful remedy, it is not an exclusive one. For, though it is true ₜthat where a statute creates a new right and gives a new remedy, this remedy is exclusive; yet when the statute merely creates the right, and is silent as to remedies, all the common law remedies are open:— 1 *Chit. Pl.* 112. Here the statute makes the claim in question a debt, and declares that the new town shall *pay* it, and there leaves it. In such case an action at law may be maintained:— 1 *Wend.* 54; *Ibid.* 319; 25 *Wend.* 680; 2 *Hill*, 45.

*M. Wisner*, and *A. B. Maynard*, for defendant:

The statute providing for the division of a township, prescribes the rule for the apportionment of its debts. It creates the liability on the part of the new township, and the amount of such liability is fixed and determined by the apportionment made by the township boards in the manner provided by the statute. No suit could be maintained by the township so divided for any share of its indebtedness until the apportionment had been made. The township board of the new township might be compelled by mandamus to meet for the purpose of making the apportionment: — 2 *Cow.* 485.

The statute provides that no execution shall be issued on a judgment against a township, but that the same shall be collected like other town charges: — *Comp. L. p.* 1309. A judgment, therefore, would be no more effective *as a remedy*, than the judgment of the township boards. Their action is judicial and conclusive. It is not open to review directly, or collaterally by suit. The defendant could as effectually resist a mandamus to compel the payment of a judgment of a court, as one to enforce the payment of the sum apportioned by the township board: — 13 *Pet.* 498; 5 *Rawle*, 18; 19 *Wend.* 56.

If, then, the judgment or decision of the township boards is binding upon the townships, must not the plaintiff seek payment of such judgment in the manner pointed out by the statute, by presenting the same to the township board of the defendant, and demanding their order on the treasurer of the town? The statute provides how the charges against a township shall be allowed and paid, and to hold that the payment of this or any other claim against a township, especially where the amount is settled and adjusted, could be enforced by action, would be to treat the statute as a nullity: — 2 *Sandf.* 460.

A remedy that would exclude mandamus, must be legal and competent to afford relief to the applicant upon the

MARATHON *v.* OREGON.

*very subject matter of his application:* — 1 *Barb.* 34; 1 *Doug. Mich.* 319; 3 *Mich.* 427; 4 *Mich.* 188. Had the plaintiff applied to this court to enforce the payment of the sum apportioned by the township boards, would the application have been refused on the ground of there being an adequate and effectual remedy, by action, upon the subject matter of his application?

The following cases fully establish that mandamus is the appropriate and only remedy in cases of this character: 2 *Mich.* 189; 15 *Barb.* 529; 20 *Barb.* 294; 2 *Binn.* 275.

CAMPBELL J.:

This suit is brought to recover an ascertained sum found by the united action of the township boards to be due from Oregon to Marathon, upon a division of the latter township, whereby the former was set apart and became liable for its share of the debts to be thus determined: — *Comp. L.* 247-8.

Putting aside, for the present, all questions concerning the regularity or sufficiency of the proceedings of the local authorities, the important consideration is suggested, whether an action will lie for the sum ascertained. Townships may be sued in some cases, and judgments obtained against them; but it is claimed by the defendant that actions will not lie in cases like the present.

By examining the statute which fixes the liability upon judgments, we find that when a judgment is obtained against a township "no execution shall be awarded or issued upon such judgment, but the same, unless reversed, shall be levied and collected as other township charges," &c.— *Comp. L. p.* 1309, § 4917. A judgment which can only be enforced in this way, amounts practically to nothing more than a fixed and unchangeable ascertainment or assessment of indebtedness, whereby an open claim becomes liquidated. It is placed on the foot-

8 MICH.— Z

ing of a definitely ascertained township charge. The only way to enforce it, if resisted, is by mandamus.

The action in this case is brought, not upon an open and disputed account, but upon a liquidated claim, determined by a statutory board or tribunal. Although the statute declares the basis of contribution, upon the division of a township, to be the assessment roll previous to the division, yet it is not pretended that any claim for contribution could be enforced until the two township boards convened together and determined the amount to be contributed by each. If the action lies, it lies upon the amount so ascertained and apportioned, and not upon an open account. Whether any revisory power exists in any court to review the proceedings of the town boards, has not been argued. If such power exists anywhere, it can only be under *certiorari*, which has not been taken, and which could not now be had, because of the lapse of time. This award or determination is absolute, unless set aside,—if indeed there is anywhere power to set it aside.

Being ascertained by the tribunal referred to, it becomes, under the statute, a charge upon the township.— And being such a charge, it is the duty of the town officers to see that it is paid. And if they fail to perform this duty, requiring the claimant to obtain judgment upon it cannot serve either to liquidate it any more perfectly, or to make it any more definitely a township charge. Nor would any action of the town authorities, or of the township itself avail, to destroy the validity of the finding.

Where a duty exists in a township to pay a specific and ascertained charge, it would be unjust to both parties, debtor and creditor, to permit or require a suit at law, when the judgment cannot be collected by execution. The township ought not to be put to useless expense by the fault of its officers, and the creditor ought not to be put to delay, or a double pursuit.

MARATHON v. OREGON.

It has been held in a great many cases, that *mandamus* was the proper remedy to compel satisfaction, by a municipal body of this kind, of a liquidated demand. Such has been the course in regard to the damages ascertained by appraisers upon opening highways:— *Harrington v. County Commissioners of Berkshire*, 22 *Pick.* 263; *People v. Township Board of La Grange*, 2 *Mich.* 187; *People v. Supervisors of St. Lawrence*, 5 *Cow.* 292; *People v. Supervisors of Kings County*, 16 *Wend.* 520; *Treat v. Middletown*, 8 *Conn.* 243; *People v. Superisors of Westchester*, 4 *Barb.* 64; *Miller v. Bridgewater*, 4 *Zab.* 54.

In this state a *mandamus* has been issued to compel a board of supervisors to allow the amount of a claim which was adjusted by proper officers under the law:— *People v. Supervisors of Macomb*, 3 *Mich.* 475. And we have had occasion to compel the granting of a warrant upon an adjusted claim, in the case of *People v. Auditors of Wayne County*, 5 *Mich.* 223. The case of the *Commissioners of Highways of Niles v. Martin*, 4 *Mich.* 557, contains some remarks upon the impropriety of subjecting towns to actions for the faults of their officers.

In New York the following cases have also a bearing upon the general question of the propriety of a mandamus, instead of an action:—*People v. Edmunds*, 15 *Barb.* 529; *Same v. Same*, 19 *Barb.* 468; *People v. Supervisors of Columbia*, 10 *Wend.* 363; *Bryce v. Supervisors of Cayuga County*, 20 *Barb.* 294. And in Wisconsin the case of *School District No. 2 v. School District No. 1*, 3 *Wis.* 333, which was a case of a division of a school district, decided that an action would not lie for the sum awarded. It is true the law required it to be levied as if voted. But we do not think the duty there any more positive than here.

A distinction is asserted between liquidated demands of this kind, and judgments, because the statute is express that on these no execution shall be awarded, " but the same

shall be levied and collected as other township charges."—
If this ascertained balance is a township charge, then the
statute in express terms makes the rule of levying and
collecting it the rule of levying and collecting a judgment.
The statute is express that the township shall be charged
with it, and shall pay it. The township board are author-
ized to audit and allow claims against the town, and the
amounts allowed by them are required to be paid by the
Treasurer on their order. There are also claims for dam-
ages on the opening of highways. When settled by the
commissioners and owner, as they might be when the pro-
visions of the statutes now under consideration were passed,
the law declared "such person shall be entitled to an order
from the township board, upon the treasurer of the town-
ship, for the amount of damages specified in such agree-
ment:"—R. S. 1846 p. 134. "If appraised, they shall be
levied and collected in the township within which such
highway is situated, and shall be paid by the township
treasurer upon the order of the township board, as other
township charges:"—p. 135. The language in regard to judg-
ments against counties is the same as against towns. What
then are township charges? We have seen how they are paid,
which is by an order from the township board upon the treas-
urer; and by the law prescribing his general duties, he is re-
quired to pay over and account for moneys in his hands "ac-
cording to the order of such township, or the officers thereof
duly authorized in that behalf." Comp. L. § 568. It is
fair to assume that any amount which is a fixed liability
of the township, and entitled to be paid, is a township
charge. And certainly, a claim which is to be levied and
collected like other township charges, is not to be preferred
above other township charges among which it is classed, or
enforced differently. The very object of such a statute
seems to be to prevent a judgment creditor of a township
from obtaining a preference. And there is no reason in
the world why one ascertained creditor of a township
should not stand on an equality with all others.

We have no statute now which defines a township charge at all; but the Statutes of 1838 did so, and recognized claims allowed by the board as such: and they were included in the taxes to be raised, in addition to the sums voted by the township meeting: — *R. S. of* 1838 *p.* 64.— No vote beyond their mere allowance was required by law, to include them within the tax levy; but the clerk certified to the commissioners such amounts as were "*to be raised*," not such amounts as the township or board *had voted*: *R. S.* 1838, *p.* 82. The present law requires the clerk to certify in the same manner to the supervisor the amount *to be raised* for township purposes.

The statutes relative to the voting of money authorize the township meeting to vote such sums as they may deem necessary for defraying *all proper charges and expenses arising in the township.* The board, upon the neglect or refusal of such meeting to vote "*such sums as may be necessary to defray the ordinary township expenses*," may vote such sums themselves. If the term "*charges*" means what we have referred to as "*township charges*," and does not come within the term "*ordinary expenses*," then, if after allowance by the board, or when put in judgment, they require any further action, we should have the strange result of a board authorized to repair the neglect of the township for ordinary expenses, yet not authorized to provide for acknowledged and liquidated debts. This would enable the township to repudiate. But although the use of the term "*charges*" in two different senses is awkward, yet fortunately we have the means of tracing it out in its origin. The Revised Statutes of 1838, p. 57, authorized the township meeting to "vote such sums of money as they shall judge necessary for the purpose of supporting and maintaining the poor, and *for all other necesary and proper charges arising in the township.*" And yet the meeting had no power whatever to vote a dollar to pay allowed and li-

quidated claims; and the term "*charges*" thus used, means any matters which were supposed likely to require expenditures in amounts either definite or indefinite. But in declaring the effect of the allowed claims, the law requires them to be raised in addition to the amount voted by the town meeting, and puts each claim allowed by the board on the same footing with the aggregate voted sum laid in one general amount by the meeting on the township, declaring the sums thus ascertained by either body "*township charges.*" A "*township charge,*" then, is fixed in amount. But the charges to be provided for by township vote, are not necessarily liabilities existing, and are merely estimated sources of expenditure, which may or may not include fixed debts. There are some matters, at least, which are, under no view, *ordinary township expenses*; such as those sums which the Board of Supervisors may authorize to be raised by the township for special purposes, as mentioned in § 345 of the Compiled Laws; and probably many others; and such matters could not be wisely trusted to the discretion of the board. But there would be no very good reason for leaving liquidated claims to the sole discretion of the township. And if left to them at all, it would be exceedingly difficult to reach such a body by coercive measures. It is certainly no violation of terms to class the payment of debts ascertained among ordinary expenses.

We think cases like this call for a similar action to that had in the case of *The People v. The Supervisors of Macomb County.* There the supervisors were compelled to allow the claim as a ministerial act, because it had already been legally adjusted by an authorized board. Should the township board of Oregon refuse to allow this claim and give an order on the treasurer for the amount, we think a mandamus is the proper remedy. And a refusal by any other township officer to do any act which the law requires — which, however is not

to be anticipated in any case — would subject him in like manner to a similar mandate.

The court below committed no error in holding that the plaintiff's action would not lie. The judgment must be affirmed with costs.

MARTIN CH. J. and MANNING J. concurred.

CHRISTIANCY J.

I am unable to concur in the opinion of my brethren in this case. I admit the correctness of all the decisions which they have cited, but I do not think them applicable to the present case.

In all the cases cited, nothing remained to be done but the performance of a clear ministerial duty, imposed by law upon the officer or board to whom the mandamus was directed. The county, township or school district represented by such officers or board, was not in default; but the neglect or refusal of such board or officers, was the only obstacle of which the relator could complain.

If such be the fact in the case before us — if the township of Oregon has performed all its duties, in reference to the claim of the township of Marathon, and nothing remains to be done but the performance of a clear ministerial duty of the township board, township clerk, or supervisor of Oregon, in voting, certifying or assessing the tax, then the remedy of the relator is by mandamus, to compel the board, the clerk or supervisor, to perform that ministerial duty.

But so far from being the duty of these officers, there is, I think, no power in any or all of them combined, to raise the tax for the payment of this claim, until either the inhabitants have voted to raise it, or until, as a substitute for this vote, a judgment has been obtained against the township.

That the action of the township boards of the respective townships, in making the apportionment, if legally performed, has made this a fixed and definite township charge, I fully admit. If such action has not been legal, then certainly no duty is imposed upon any officers to raise the tax, and no mandamus should issue to compel it. In discussing the form of remedy, however, the legality of the action of the board must be assumed.

But the mere fact that this claim has become a fixed and definite township charge, does not authorize the supervisor to assess a tax for its payment, nor the clerk to certify it to him for assessment.

Ordinary township expenses, when audited and allowed by the board, and especially when orders have been issued for them upon the treasurer, are quite as clearly fixed and definite township charges: — *Comp. L.* § 564. But the supervisor cannot, even in such cases, assess the tax for the payment of such charges, nor could the clerk certify the amount to him for assessment, until either the inhabitants, at a legal meeting, have voted to raise the amount (*R. S. Ch.* 16 § 3; *Comp. L.* §495) or, in default of such vote by the inhabitants, the township board have voted to raise it, pursuant to the act of March. 31, 1849 (*Comp. L.* § 597).

But the claim in question in this case, does not, I think, come within the designation of ordinary township expenses; and therefore cannot be voted by the township board.— From the adoption of the Revised Statutes of 1846 until the passage of this act of 1849, there was, I think, no power in any or all the township officers to raise or assess a tax, even for ordinary township expenses, until the inhabitants at a legal meeting had voted to raise the sum. In connection with this act of 1849, see *R. S. Ch.* 16, §§ 72 *to* 75; *Comp. L.* §§ 564 *to* 567. In this respect the Revision of 1838 (p. 64 § 40) differed materially from that of 1846 on the same subject:— (*Comp. L.* § 564.) The former, after providing for the auditing and allowance of claims, &c.,

by the township board, and that the sums so allowed, "as well as any sum directed by a vote of the township to be raised for township purposes, shall be considered proper township charges," added the words: "*and shall be raised on the taxable property of the township in the manner provided by law.*" This latter provision was left out of the Revision of 1846. And the following additional provisions in the latter Revision, not found in the Revision of 1838, show, I think, very clearly, that the provision just quoted was purposely omitted in the Revision of 1846; and that by the latter Revision the Legislature plainly indicate the intent to withhold from the township board the right they had formerly possessed of raising taxes, for claims audited and allowed by them, without a vote of the inhabitants.— These additional provisions are, 1st: That the township board is required to meet annually on the Tuesday *next preceding* the *annual township* meeting, for the purpose of auditing and settling all claims against the township:—(*Comp. L.* § 564): and 2d: That "all accounts audited by such board shall be filed, and presented by such clerk for the inspection of any of the inhabitants of the township, and shall be produced at the *next annual township meeting, and there read by him,* if the same shall be required by the meeting." This was doubtless required to enable the meeting to vote the sums necessary for their payment under section three of the same chapter (*Comp. L.* § 495).

Thus stood the law till the act of 1849 (*Comp. L.* § 597), which provides that "whenever the qualified electors of any township, at the annual township meeting, *shall neglect or refuse to vote such sum or sums* of money as may be necessary to defray *the ordinary township expenses,* the township board of any such township is hereby authorized, at any regular meeting, to vote *such sum or sums* as may be necessary for that purpose, not exceeding such amounts as are or may be limited by law." This act, by a necessary implication, prohibits the board from "voting"

any sum for any purpose other than "*ordinary township
expenses.*" And unless the claim before us is one for or-
dinary township expenses, it can only be raised by a vote
of the inhabitants. This my brethren admit, and they
therefore hold it to be an ordinary township expense.—
But to reach this conclusion a criterion is adopted for
distinguishing ordinary from extraordinary expenses, which,
it seems to me, does violence both to the language and
the spirit of the statute. The distinction is made to de-
pend solely upon the question whether it is liquidated and
has been allowed by the board, or is unliquidated and has
not been allowed. If such was the meaning of the Legisla-
ture, they were exceedingly unfortunate in their mode of
expressing it. To get any such idea from the language, re-
quires divination rather than interpretation. The distinction
intended by the statute depends, I think, entirely upon the
nature or character of the "expense," — whether such ex-
pense was of the kind *usually*, ordinarily, incurred in the
transaction of the common township business, or such as could
only be likely to happen on extraordinary occasions or un-
usual exigencies. Whatever difficulty there might be in
any case, in determining whether a claim fell under the
one or the other, there can be none in the case before us.
This is a claim which springs from facts existing before the
township; the claim came into existence with the township,
and as a consequence of its creation. It can never occur
again. It is much larger in amount than the probable or-
dinary expenses of an entire year, or perhaps several years.

Claims for extraordinary expenses may be audited and
allowed, as well as others, and there may be unliquidated
and unaudited claims for ordinary expenses; though proba-
bly no tax could be assessed by the board for the latter
before allowance.

The conclusion at which my brethren have arrived ne-
cessarily assumes, that the power of the board to vote the
tax is coextensive with their power to audit and allow

claims. I do not think such a conclusion warranted by the statute. The board are expressly authorized to audit and settle "*all claims against the township*": — *Comp. L.* § 564. Their power to vote a tax is, by words equally express, confined to *ordinary township expenses*: — *Comp. L.* § 597. Why is the latter limited and the former unlimited?

The township clerk has no authority to *determine* the amount to be raised by tax; nor can he certify any sum to the supervisor for that purpose simply because it has been audited and allowed as a township charge; much less is he *required* to do so: if such were his duty, the provision authorizing the township board to vote it, when for ordinary expenses, would be utterly useless and nonsesical, not to say repugnant; for as clerk of the board he is bound to file and present all the accounts and claims which have been audited and allowed. The recognition or allowance of a claim, as a township charge, is one thing; the determination to raise the amount by a tax, is another and different thing, and one over which the clerk has no power, except to certify the fact, when it has been determined by the inhabitants or the board.

It must be borne in mind that this claim was adjusted by the township boards in 1856, under substantially the present law: and the question whether a mandamus will lie, must depend upon the law which was then in force, or the present law. It cannot be helped by the statute of 1838 long before repealed. My brethren seem to me to take it for granted that, because a mandamus would have lain under the statute of 1838, it may also be supported under the statutes, now in force, which are essentially different. I cannot see how the conclusion follows from the premises.

Without a vote of the inhabitants, then, the township clerk could, I think, have no power to certify this claim to the supervisor under *Comp. L.* § 807, or *Laws*

*of* 1858, *p.* 181; nor the supervisor to assess it under *Comp. L.* § 815, or *Laws of* 1858, *p.* 182. Though the statute makes it a township charge, there is nothing in the language conferring the power, or imposing the duty, upon any officer or board, to vote or assess a tax for its payment, more than for other township charges not covered by the act of 1849. It does not allude to the subject of levying or collecting the sum by tax. The language of the statute is, "and each township shall thereafter be charged with and pay its share of the debts, according to such apportionment." We must therefore look to some other provision for the power and the duty to impose the tax.

It is only necessary here to say, that if, after the apportionment, each or either of these townships should vote to raise the amount apportioned to it, and any township officer of either should refuse to perform any ministerial duty required of him for imposing the tax, a mandamus might be issued at the instance of a creditor whose claim was against the original township before the division, to compel such defaulting officer of either township to perform his duty. And the township to which the sum was due would be entitled to the like remedy.

But if a mandamus is to issue to compel the assessment of this tax, to whom shall it issue, and what officer or board is to be compelled to raise the tax? It must issue, if at all, to some board or officer having a power, under some statute, to impose the tax had no mandamus been issued: for no township board or officer has any common law power to levy this or any other tax; nor can the mandate of the writ give the power, or impose the duty. It can simply enforce the execution of a power and the performance of a duty already existing.

As no power in the township is competent to vote or order this tax but the inhabitants at a legal meeting—

they having neglected to vote it, the default is with them, not with their officers. Shall the writ issue to the inhabitants to compel them to vote the raising of the tax? This will not be claimed, as it might exceed the power of the court to compel obedience to the writ.

The case of *School District No. 2 v. School District No. 1*, 3 *Wis.* 333, cited by my brother Campbell as deciding the question before us, somewhat resembles the present case in some of its circumstances; but the statute of that state providing for the division of school districts is essentially different from ours for the division of townships; and it is precisely upon this difference that the decision of the court in that case rests. The Wisconsin statute required the district board of the district retaining the schoolhouse, to raise the amount "in the same manner *as if the same had been authorized by a vote of their district for building a school-house;*" that is, by a tax which the board had the power, in such case, to assess. If our statute authorized the supervisor to assess the necessary tax in the present case, in the same manner as if authorized by a vote of the inhabitants, the cases would be parallel, and no one would doubt the remedy by mandamus. Such is the provision of our own statutes in reference to the division of school districts. *Comp. L.* § 2320.

Is there, then, no mode provided to compel the raising of this tax without a vote of the inhabitants? I answer; the statute has provided a remedy, plain, simple and adequate; and that remedy is by obtaining a judgment against the township. The judgment of a court of competent jurisdiction against the township, dispenses with a vote of the inhabitants, furnishes an equivalent safeguard against dishonesty and abuse, and imposes upon the supervisor the same duties in regard to the levying of the tax as would be imposed by a vote of the inhabitants. And upon producing to the supervisor a certified copy of the judgment, and requesting him to levy the amount, he would, I think,

be bound to assess it without a certificate from the town-ship clerk. If not, the clerk upon receiving the like copy of the judgment, and the request, would be bound to certi-fy the amount to the supervisor. Such, I think, is the effect of section 7, chapter 148 (§ 4917) of Compiled Laws, which is in the following words : " When a judgment shall be recovered against any township, or against any township officers, in an action prosecuted by or against them in their name of office, no execution shall be awarded or [issued upon such udgment, but the 'same, [unless reversed, shall be levied and collected as other township charges; 'and when so col-lected, shall be paid by the township treasurer to the per-son to whom the same shall have been adjudged, upon the delivery of a proper voucher therefor."

This is the only provision which in any manner alludes to or requires the levying of a tax where it has not been voted by the inhabitants, or which imposes any duty upon any officer to levy or collect. It is to be " levied and col-lected as other township charges." Other township charges are levied by the supervisor, and collected by the treasurer. After such judgment duly brought to the notice of the su-pervisor, and a request to levy the tax, his duty to assess it would be clear and plain; and if he refuse, he may be compelled by mandamus.

But my brethren hold, that the section to which I al-lude gives no more authority to assess than existed with-out it. This, I think, is an error. There is not a word to be found in the provision making the present claim a township charge, nor in any provision in reference to the township board, or any township officer, indicating, in the remotest degree, how the amount is to be collected, nor referring at all to the subject of its collection, until we reach this provision for the collection of a judgment.— Hence the common law remedy by suit is necessarily implied :— 1 *Chit. Pl.* 112; *Stafford v. Mayor,* 6 *Johns.* 1; *Hawkins v. Trustees,* 1 *Wend.* 53; *People v. Brook-*

*lyn*, 1 *Wend.* 318; *People v. Mayor*, 25 *Wend.* 680; *Ex parte Lynch*, 2 *Hill*, 45. And the language of this section is, I think, quite as clear an authority for the supervisor to assess a tax, as the provision of the law of 1838 (*p.* 64 § 40) was for the township board to order it. Neither imposes the duty expressly upon any particular officer or board — both, however, are equally clear by reference. But if this provision (§ 4917) only authorizes the board to order the tax, it is still the first and only provision in our present statute by which they have any such authority; and this is after judgment.

My brethren profess to see in this provision but one object — that of preventing a judgment creditor from obtaining a preference. This is to suppose the Legislature were providing a remedy against a township as an insolvent debtor — are idea which I cannot think ever occurred to the Legislature. I think this provision, taken in connection with the other provisions cited, indicates an intention to recognize the common law right of bringing suit against a township, not only for torts (when they may be liable) but on all claims disputed by the township and not allowed by the board, as well as those which they have the right to allow, but for which they can not vote, and the inhabitants refuse to vote, a tax; that an execution was denied, and a tax substituted, because townships generally have no property which could be taken on execution, without great detriment to the public interest; and, however collected, the amount must ultimately be raised by tax.

Whether the Legislature have adopted the best possible mode for accomplishing the objects they had in view, by these several provisions, I have not undertaken to inquire; because I have not felt at liberty to disregard the provisions they have seen fit to enact, and to substitute others which I might think they should have enac-

ed. I will, however, say that I do not think the operation of these statutes will be improved by the construction which my brethren have felt it their duty to adopt.

*Judgment affirmed.*