STATE *ex rel* DICKSON V. WILLIAMS, Mayor, *et al.*

1. By the terms of section 5, art. 3, c. 37, Laws 1890, which provides, that "the mayor shall have power to remove any officer appointed by him, whenever he shall be of the opinion that the interests of the city demand such removal, but he shall report the reasons for such removal to the council at its next regular meeting," power is conferred upon the mayor of a city incorporated under that act to remove any officer of the city appointed by him "whenever he shall be of the opinion that the interests of the city demand such removal." And the last clause of the section, which requires the mayor to report "the reasons for such removal to the council at its next regular session," does not constitute a qualification or limitation upon such power of removal by the mayor.

2. The city council of a city incorporated under the Laws of 1890, providing for the incorporation of cities, possesses only such powers in appropriating the money of the city as are conferred upon it by the act under which it is incorporated.

3. The mayor of the city of Sioux Falls, on May 14, 1894, caused to be served upon D., the chief of police of said city, an order signed by him as such

mayor, removing said D. from his said office of chief of police, reciting therein that in his opinion the interests of the said city demanded the removal of said D. from the said office; but the city council of said city notwithstanding the action of the mayor, allowed, and ordered to be issued to said D., city warrants for his salary as such chief of police, for the months of May and June, 1894, *Held,* that on May 14th the said D. was legally removed from his said office as chief of police, and that thereafter he had no legal claim upon the city for such salary.   *Held,* further, that the allowance to D. made by the city council for salary after May 14th, 1894, was not for the payment of any debt or legal expense of the city, nor for any corporate purpose, and that the allowance to D. of such salary was made without lawful authority, and was not binding upon the city.

(Syllabus by the Court.   Opinion filed Oct. 17,  1894.)

Appeal from circuit court, Minnehaha county.   Hon. JOSEPH W. JONES, Judge.

Application by the state of South Dakota, on relation of Joseph M. Dickson, for a writ of mandamus to compel Roy Williams, as mayor, and Frank L. Blackman, as city auditor, of the city of Sioux Falls, S. D., to issue warrants in payment of relator's salary as chief of police of such city.   From a judgment granting a peremptory writ of mandamus, defendants appeal.   Reversed.

The facts are stated in the opinion.

*C. P. Bates,* for appellants.

A writ of mandamus will only issue to compel action when the right of the relator is clear, and never to enforce a disputed claim.   High Ext. Leg. Rem. § 8 and 32; Spelling Extr. Rel. § 1441; Bailey v. Lawrence Co., 2 S. D. 533; 51 N. W. 331; State v. Getchell, 55 N. W. 585; People v. Wendell, 71.N. Y. 171. Mandamus will not lie to compel the mayor or auditor to issue warrants to pay claims illegally allowed by the city council. City v. Campbell, 3 S D. 309; 53 N. W. 182; State v. Comm. 21 O. St. 648; State v. Yeatman, 23 O. St. 546; McKeizie v. Barogo, 39 Mich. 554; People v. Lawrence, 6 Hill 244; People v. Wood, 13 Abb. Pr. 374; People v. Edmunds, 19 Barb. 468; High Ext. L. Rem. 360.   Under the statute the mayor has the power to remove from any office any police officer for any cause

deemed sufficient to himself. Att'y Gen. v. Brown, 1. Wis. 513; People v. Whittock, 92 N. Y. 198; People v. Nichols, 79 N. Y. 582. The act of an officer in the exercise of a discretionary power cannot be reviewed by any other person or individual. State v. Doherty, 13 Am. R. 131; State v. Board, 26 O. St. 24; People v. Stout, 19 How. Pr. 171; Wilcox v. People, 90 Ill. 186; State v. McGarry, 21 Wis. 502. A presumption is always indulged in support of all kinds of official action. Lawson Pres. Evi. Rule 14; Culbertson v. Milhollen, 22 Ind. 362; Dubus v. Voss, 92 Am. Dec. 526; Mandeville v. Reynolds, 68 N. Y. 528; Finch v. Barclay, 13 S. E. 566; Hartwell v. Root, 19 Johnson 345.

*Orr & Lawshe,* (*T. B. McMartin,* of counsel), for respondent.

In every case where the city council makes or authorizes an appropriation, having jurisdiction so to do, it is the duty of the mayor to sign the order issued in pursuance thereof, without inquiring whether the appropriation was wisely or properly made. State v. Ames, 18 N. W. 276.

CORSON, P. J. On July 18, 1894, Joseph M. Dickson presented to the circuit court of Minnehaha county an affidavit in which he states that on September 3, 1893, he was duly appointed chief of police for the city of Sioux Falls, and that he had continued to perform the duties of said office, and was at the time of making said affidavit the chief of police of said city; that the defendant Roy Williams was the mayor of said city, and that the defendant Frank L. Blackman was the city auditor; that on June 8, 1894, the city council of said city allowed and ordered a city warrant to be issued to him for the sum of $70, for his salary as chief of police for the month of May, 1894, and that on July 2d the said city council allowed and ordered to be issued to him a similar city warrant for his salary for the month of June 1894; that he had duly demanded of the said mayor and city auditor the said warrants, but that they refused to comply with said demand, and refused to issue to

him said warrants. And he concluded with the usual prayer, that the court issue a peremptory writ commanding said defendants to issue him said city warrants. The circuit court thereupon issued its alternative writ of mandamus, commanding the said defendants to issue and deliver to the plaintiff the said city warrants as demanded, or show cause, etc. To this alternative writ the defendants made return and answer, in which, after admitting certain allegations in the writ, they allege, among other things, the following facts: "These defendants allege that the said Roy Williams now is, and ever since the 7th day of May, 1894, has been, the duly elected, qualified, and acting mayor of said city of Sioux Falls, and that the said Frank L. Blackman now is, and ever since the 5th day of June, 1894, has been, the duly appointed, qualified, and acting city auditor of the said city of Sioux Falls. These defendants further allege that on the 14th day of May, 1894, the said Roy Williams, as mayor of said city of Sioux Falls, was of the opinion that the interests of said city demanded the removal of said Joseph M. Dickson from said office of chief of police of said city, and thereupon, and on said date, the said Roy Williams, as such mayor as aforesaid, duly removed the said Dickson from said office of chief of police, pursuant to the powers conferred on him as such mayor by the provisions of article 3 of chapter 37 of the Laws of 1890, and that ever since said date the said Dickson has not been either the qualified or acting chief of police of said city, and has not been an officer of said city, or employed by said city in any manner or capacity whatever. * * * These defendants further allege that on or about the 8th day of June, 1894, the said Frank L. Blackman, as city auditor of the city of Sioux Falls, drew and countersigned a warrant on the treasurer of said city, in the usual form, payable to said Dickson, for $29.35, that being the amount due him from said city for salary as chief of police from the 1st day of May, 1894, to the 14th day of May 1894, when he was removed from said office as aforesaid, and that the said Roy Williams,

as mayor of said city, signed said warrant on or about June 8, 1894, which said warrant is now in the office of said city auditor, to be delivered to said Dickson on demand; and these defendants further allege that the said sum of $29.35 is the only amount due or owing by said city to said Dickson for salary as chief of police of said city during the time he held said office, and that the said city is not, and was not on either June 8, 1894, or July 2, 1894, indebted to said Dickson in any sum exceeding $29.35, the amount for which said warrant was issued by said mayor and city auditor as aforesaid. These defendants further allege that the amount for which said warrrants were ordered drawn by said city council as aforesaid, in excess of the said sum of $29.35, was not a legal charge against said city, and that said warrants were not ordered issued for the purpose of providing for the payment of any debt or expense of said corporation, or for any corporate purpose whatever, and that the said city council, in ordering the issuance of said warrants as aforesaid, exceeded its jurisdiction and the powers conferred upon it by statute." The notice of removal, served upon the plaintiff on the 14th day of May, 1894, reads as follows: "Sioux Falls, S. Dak., May 13, 1894. Please to take notice that under and by virtue of the power in me vested as mayor of the city of Sioux Falls, South Dakota, and being of the opinion that the interests of the city demand your removal from the office of chief of police of said city, I have removed and do hereby remove you from the office of chief of police of Sioux Falls, South Dakota. To Joseph M. Dickson. Roy Williams, Mayor of the City of Sioux Falls, S. D."

The affidavits and pleading are full and specific, but their great length precludes us from giving more than the foregoing summary of them. The case was tried by the court without a jury, and it found its facts and stated its conclusions of law, from which we only deem it necessary to copy in this opinion the following findings of fact and conclusions of law: "(7) That said defendant Roy Williams, mayor of said city, on

the 14th day of May, 1894, did serve upon said plaintiff as relator a writing in which it was recited that the said mayor was of the opinion that the interest of said city demanded the removal of said Joseph M. Dickson from the office of chief of police of said city, and whereby said mayor notified the relator, Dickson, that he had removed and did thereby remove him from the office of chief of police of said city of Sioux Falls. (8) That no evidence was introduced tending in any manner to prove that the said defendant Roy Williams, as mayor of the city of Sioux Falls, reported to the city council at its next regular meeting, or at any time, the reasons wherein he deemed it for the best interests of the city of Sioux Falls that the said Dickson, as chief of police, be removed." And as conclusions of law from the foregoing facts the court finds "that the plaintiff was not removed from the office of chief of police of the city of Sioux Falls; that he was entitled to the salary as chief of police of the city of Sioux Falls; that the plaintiff is entitled to writ of mandamus. * * *" A judgment was thereupon rendered in favor of the plaintiff and against the defendants, and the peremptory writ of mandamus, as prayed for, was directed to be issued, and from this judgment the defendants appeal.

The section of the statute referred to in paragraph 4 of defendants' return and answer is section 5, art. 3, c. 37, of the Laws of 1890, and reads as follows: "The mayor shall have power to remove any officer appointed by him, whenever he shall be of the opinion that the interests of the city demand such removal, but he shall report the reasons for such removal to the council at its next regular meeting." It is quite apparent from the eighth finding of fact and its conclusions of law that the court construed the section of the statute above quoted as requiring the mayor to report to the city council his reasons for such removal before the notice of removal would become effective, and that, it not being shown that such report had been made to the city council, the plaintiff was entitled to judg·

ᐧment. The counsel for the plaintiff frankly admit in their brief that, unless this construction of that section of the statute is the correct one, the judgment of the court below cannot be sustained. We are of the opinion that the construction given to this section by the learned circuit court was erroneous; and, in our view of the section, the mayor is given full and absolute power to remove appointed officers whenever, in his opinion, the interests of the city require it, and that the last clause of the section, requiring him to report his reasons to the city council at its next session, constitutes no limitation upon his power. It will be noticed that the first clause of the section provides that the mayor may remove such an officer "whenever he shall be of the opinion," etc. The power thus conferred is absolute, and without any other limitation or qualification than that he shall be of the opinion that the interests of the city require such removal. The last clause of the section is not in the nature of a proviso or condition precedent to such removal, but a require- ment that the major shall make the report therein specified, evidently for the purpose of apprising the city council and the citizens generally of the reasons for such removal, and a fail- ure to make this report does not affect the action of the mayor in making the removal. This is evident from the fact that the mayor is not required to report the reasons for his proposed removal, but "the reasons for such removal." This language presupposes that the officer has been actually removed. Again, the mayor is required to report to the city council "at its next regular meeting." This language also presupposes that the act of removal has been accomplished, and at the next regular meeting is the one occurring after such removal. This con- struction of the section is strengthened by the fact that the city council is charged with no duty in reference to the re- moval. It is not vested with any power to approve or disap- prove of the action of the mayor. No action on the part of the city council is required in reference to the report, and none is contemplated by the section. Any action, therefore, of the

city council upon the report, confirming or rejecting the same, would not in the slightest degree affect the order of the mayor making the removal.   Similar language is used in section 7 of the same article.   That section provides that "the mayor may release any person imprisoned   *   *   *   and shall report such release, with the cause thereof, to the city council at its first session thereafter."   It will not be claimed, we apprehend, · that when the mayor issues his order releasing a person imprisioned the city jailer could detain such person in custody until he ascertains that the mayor has reported the cause of such release to the city council, or that in case a person is released upon the mayor's order, and the mayor fails to make the specified report, the person could upon that account be rearrested and again placed in custody.   The prisoner is lawfully released, whether the mayor reports to the city council or not.   A somewhat similar provision is found in section 5, art. 4, of our state constitution.   That section provides that the governor may, in certain cases, grant pardons to a certain class of convicts;   but he is required "to communicate to the legislature at each regular session" the names, etc., "with his reasons for granting the same."   When the governor grants a pardon, we think no one would claim that the pardon would not take effect until the governor had reported his reasons for granting the same to the legislature, or that the warden of the state prison could detain the convict until he ascertain that the reasons for the pardon had been communicated to the legislature by the governor.   The requirement that the governor or mayor report their reasons for their actions in this class of cases is designed to act as a check upon the improvident or improper exercise of the power by the officer exercising it, but is no limitation upon or qualification of the power, so far as it affects the act done. The removal, the release, or the pardon is unaffected by the failure of the officer to comply with the requirements of the law by reporting his reasons for the act done.   His failure to comply with the requirement may subject him to censure, or

possibly to more serious consequences, but it does not in any manner affect the act done.

But we are not without judicial authority for our construction of this section, that the power of removal is conferred upon the mayor, to be exercised solely under the conditions stated in the statute. In Attorney General v. Brown, 1 Wis. 514, the supreme court of that state held that the statute which conferred upon the governor power to remove the commissioners of the state prison, "when he shall believe that the best interests of the state shall demand such removal," authorized the governor to remove such officers at his discretion, and that his discretion could not be reviewed by the courts or any other tribunal. His power of removal was absolute. In the case of People v. Whitlock, 92 N. Y. 191, the court of appeals of that state were required to construe a section of the act relating to the city of Syracuse, which provides as follows: "The mayor of said city is hereby also authorized to remove from office any commissioner of said department, for any cause deemed sufficient to himself, but he shall forthwith make and transmit to the common council, to be entered upon their record of minutes, a statement in writing, signed by himself as such mayor, his reasons for such removal." It was contended by appellant's counsel that the commissioner removed was entitled to notice, and an opportunity to be heard. In deciding this question the court said: "In the act before us (Laws 1881, c. 559, § 1), the power of removal has been expressly conferred upon the mayor, to be exercised as to him shall seem meet. In People v. Nichols, 79 N. Y. 582, cited by the appellant, the statute requires, not only that cause for removal should exist, but also that the officer should have an opportunity to be heard. The statute before us lacks both conditions. No opportunity to be heard is given, and it is enough if the mayor thinks there is sufficient cause. It may or may not exist, except in his imagination, but his conclusion is final. The diligence of appellant's counsel has found no case like it, and

those cited by him do not apply.    They require either the actual existence of 'cause,' or 'sufficient cause' for removal, and so, by implication, impose investigation before action, or, by express language, give a hearing to the accused member or official.    Here the removal is to be determined summarily, and is intrusted to the unrestrained discretion of the mayor.    Nor is this without a precedent.    Among other cases, like power is given to the governor over the superintendent of public works, and to the latter over his assistant superintendents,   *   *   * and to the board of commissioners of the fire department of New York over certain subordinates.    Laws 1873, c. 335, § 28. Under that statute it was held that the power of removal was to be exercised at pleasure, except in cases where there was an express limitation to a removal after notice and a hearing, and for cause.    People v. Board of Fire Commissioners, 73 N. Y. 437."    It is true it appears from the statement of facts that the mayor had made the report required to the common council, on the same day of the removal; but the court, in its opinion, makes no allusion to this clause of the section, and seems to treat the statute as conferring upon the mayor the power of removal, ''to be exercised by him as shall seem meet," and the court also says,   ''Here the removal is to be determined summarily, and is intrusted to the unrestrained discretion of the mayor."    We think that a fair inference may be drawn from this decision that the court attached no importance to the clause requiring the mayor to report to the common council, as affecting the mayor's power of removal, or as constituting any limitation upon that power.

Our conclusion is that the mayor of the city of Sioux Falls has the power to remove the appointive officers of that city "whenever he shall be of the opinion that the interests of the city demand such removal;" and the mayor having exercised that power in the case at bar by the removal of the plaintiff, on the 14th day of May, by an order in writing, in which he stated that in his opinion the interest of the city demanded his re-

moval, the plaintiff was absolutely removed, and from that time ceased to be the chief of police of said city; and that a failure to report to the city council his reasons for such removal, if such was the fact, in no wise affected his power of removal or his order of removal. This construction seems to be required by the language of the section, and carries out the manifest intention of the legislature, in view of the omission of that body to impose any duty upon the city council pertaining to such removal.

The second question presented is, did the allowance of the plaintiff's claim for salary for the months of May and June, and its order that city warrants be issued to the plaintiff therefor, confer upon the plaintiff a legal right to such warrants? It is well settled that the city council only possess such powers in appropriating the money of the city as are conferred upon it by the act under which it is incorporated. By section 1, art. 5, c. 37, Laws 1890, it is provided that "the city council shall have the following powers: * * * (2) To appropriate money for corporate purposes only, and provide for the payment of debts and expenses of the corporation." The plaintiff, having been removed from the office chief of police, on May 14, 1894, ceased thereafter to hold such office, and consequently had no legal claim thereafter to the salary pertaining to that office. The allowance to him of the salary incident to the office, after May 14th, was not in payment of any debt or legal expense of the corporation, nor for any corporate purpose. Such allowance was therefore without lawful authority, and was not binding upon the city. City of Huron v. Campbell (S. D.), 53 N. W. 182; State v. Getchell (N. D.), 55 N. W. 585; People v. Lawrence, 6 Hill, 244; People v. Baraga Tp., 39 Mich. 554; People v. Edmonds, 19 Barb. 468; State v. Commissioners of Franklin Co., 21 Ohio St., 648. We are of the opinion, therefore, that the judgment of the circuit court should be reversed, and it is so ordered.