Jerome R. LEWIS, Plaintiff-Appellant,

v.

TIME INCORPORATED,
Defendant-Appellee.

No. 82–4026.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 15, 1983.

Decided July 12, 1983.

Charlotte E. Hemker-Smith, Bolling, Walter & Gawthrop, Sacramento, Cal., for plaintiff-appellant.

James T. Freeman, Charity Kenyon, Diepenbrock, Wulff, Plant & Hannegan, Sacramento, Cal., for defendant-appellee.

Before DUNIWAY, CHOY and ALARCON, Circuit Judges.

DUNIWAY, Circuit Judge:

Lawyer Jerome Lewis appeals from a judgment against him in his action against TIME Inc. for defamation. We affirm.

### I. *Facts.*

The cover story of TIME magazine's April 10, 1978 issue was a 10-page article entitled "Those #*X§!!! Lawyers." This case is about one subsection of that article, titled "Ethics Enforcement." In relevant part, it stated:

> If the legal profession has been reluctant to discipline its shadier practitioners, it has been swift to crack down on anyone threatening to cut fees or reduce business.

> \* \* \* \* \* \*

Under these circumstances, it is hardly surprising that some Americans have

grown cynical about lawyers—and the law. What is more, every day's newspaper offers up fresh horror stories.... Thanks to painfully slow bar discipline, a northern California lawyer named Jerome Lewis is still practicing law despite a $100,000 malpractice judgment against him in 1970 and a $60,000 judgment including punitive damages in 1974 for defrauding clients of money....

Lewis, the only lawyer criticized by name in this section of the article, sued in California state court on March 2, 1979. He alleged libel, slander, invasion of privacy, and intentional infliction of emotional distress, and named as defendants TIME Inc., Mid-Cal Periodical Distribution, and Does I through XV. Mid-Cal was dismissed from the case before it was served, but Lucky Stores, Inc., a seller of the magazine, was served as defendant Doe I on April 12, 1979.

A month after TIME was served on April 30, it removed the case to the United States District Court for the Eastern District of California. It alleged diversity between Lewis, a citizen of California, and defendants TIME and Mid-Cal, both non-California corporations. Lewis moved to remand the case to state court, arguing that Lucky, which had been served as a Doe, was a California corporation whose presence destroyed the diversity alleged by TIME. The district court denied Lewis's motion, citing first amendment concerns and what it called the "near certainty" that Lucky was joined fraudulently. *Lewis v. TIME Inc.*, E.D.Cal., 1979, 83 F.R.D. 455, 466.

The district court then entered summary judgment in favor of Lucky; that finding is not at issue here. The court also granted a partial summary judgment in favor of TIME. First, it found that Lewis's libel, slander, invasion of privacy, and intentional infliction of emotional distress claims were all bound up into one claim for relief for defamation. Lewis does not contest the finding.

Second, the district court took judicial notice of two state court judgments entered against Lewis. In one of the cases, a jury had awarded damages of $100,000 to a client who had sued Lewis for malpractice. *Smith v. Lewis,* 1975, 13 Cal.3d 349, 118 Cal.Rptr. 621, 530 P.2d 589, *overruled in part on other grounds, In re Marriage of Brown,* 1976, 15 Cal.3d 838, 126 Cal.Rptr. 633, 544 P.2d 561. In the other case, another client had won $60,000, including punitive damages, on a counterclaim against Lewis for fraud. The district court held that TIME's statements about the money judgments against Lewis were protected because they were truthful statements of matters of public record. With respect therefore to any of the article's clearly factual statements about Lewis, the court found that the only remaining question of fact was whether the assertion that Lewis defrauded *"clients,"* when the fraud judgment against him was in favor of only a single *client,* was a material variance from the truth, and therefore a basis for liability for defamation as a derogatory falsehood.

Lewis's claims were not based solely on the specifically factual statements in the TIME article. He also alleged that the article as a whole, particularly the phrases "shadier practitioners" and "painfully slow bar discipline," imparted a "gist" or "sting" that defamed him by inference. The district court ruled that the Constitution protected all of the article's negative inferences because they were statements of opinion.

After the grant of partial summary judgment, the only remaining issue to be tried was the significance of the plural "clients." The district court granted Lewis's motion for relief from his untimely demand for a jury trial, but then on its own motion reconsidered and denied the motion. After trial to the court, the district judge found that the addition of the "s" in "clients" was not a material variance from the truth. Judgment for TIME was entered on December 15, 1981.

## II. *Refusal to Remand.*

We consider first the district court's denial of Lewis's motion to remand the case to state court because of the presence of Lucky Stores and the unserved Does as defendants. The district court found a "near certainty" that joinder was fraudu-

lent. It held that that possibility, plus general first amendment concerns, demanded that it retain jurisdiction. It left open the possibility of remand "if plaintiff can demonstrate at any time prior to trial that a bona fide claim has been stated against Lucky, or that facts exist which raise a real possibility of liability." 83 F.R.D. at 466. Lewis never made such a showing, and did not serve any other defendant "Does." He did not seek interlocutory appeal of the denial of his motion to remand.

■ Lewis cites numerous cases to the effect that federal courts should remand to state court when there is the merest showing of a claim stated against a non-diverse defendant. His appeal fails, however, because after removal, when there is no appeal of a denial of a remand motion and the case is tried on the merits, the issue on appeal is whether the federal court would have had jurisdiction had the case been filed in federal court in the posture it had at the time of the entry of the final judgment. *Grubbs v. General Electric Credit Corp.,* 1972, 405 U.S. 699, 702, 92 S.Ct. 1344, 1347, 31 L.Ed.2d 612; *Sheeran v. General Electric Co.,* 9 Cir., 1979, 593 F.2d 93, 97–98. *See Libhart v. Santa Monica Dairy Co.,* 9 Cir., 1979, 592 F.2d 1062, 1066 (dictum); J. Moore, B. Ringle & J. Wicker, 1A Moore's Federal Practice ¶ 0.157 [11.–3] (1983 ed.). Here, when the final judgment was entered, only TIME, a non-California corporation, remained as a defendant. Thus, diversity jurisdiction existed at that time.

## III. *Constitutionally Protected Opinion.*

Lewis's main argument on appeal is that the district court erred when it held on summary judgment that the Constitution protected the article's general "negative inferences" because they were statements of opinion, not fact. We affirm the trial judge's grant of partial summary judgment because the inferences were protected expressions of opinion based on true statements of fact.

### A. *Inferences Arising from the Article.*

■ Lewis claims that readers would draw inferences critical of him from the article as a whole, but he particularly identifies as offensive the phrase "shadier practitioners" and the statement that "[t]hanks to painfully slow bar discipline, ... Lewis is still practicing law...."

At the outset we must determine what inferences are reasonable from the article. The district court held protected as opinion the inference that "plaintiff is an unethical and dishonest lawyer who should be disbarred." Dist.Ct.Op. at 17. Lewis attacks that characterization of the inference as too mild; he asserts that the more reasonable inference arising from the article is that because he commits malpractice and defrauds clients, he *will* be disbarred. (In fact, after the article was published, the California State Bar did not seek to disbar Lewis, but admonished him.) Lewis argues that his reading of the article, that disbarment was a foregone conclusion, is more natural than the inference that the Bar *should* disbar him. We do not read the article that way. The inference that Lewis "will" be disbarred is but an outsider's prediction of the uncertain outcome of a future adjudication. Thus, it makes no difference to our analysis whether the inference is that Lewis "will" be disbarred, or that he "should" or "ought to" be disbarred.

Lewis also contends that the district court erred by considering each offending phrase of the article separately, thereby overlooking the greater "gist" or "sting" of the article taken overall. However, when we examine the article as a whole, we find true factual statements that support any opinion of Lewis that the article expresses. TIME's use of the word "clients" rather than "client" does not change our inference analysis, particularly in view of the fact that there was more than one civil judgment against him.

### B. *Fact or Opinion.*

The constitutional privilege for expressions of opinion was identified in *Gertz v. Robert Welch, Inc.,* 1974, 418 U.S. 323, 339–

340, 94 S.Ct. 2997, 3007, 41 L.Ed.2d 789. The Court said there:

> Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas.

(footnote omitted). *See also, Greenbelt Cooperative Publishing Ass'n, Inc. v. Bresler,* 1970, 398 U.S. 6, 14, 90 S.Ct. 1537, 1542, 26 L.Ed.2d 6; and *Old Dominion Branch No. 496, National Ass'n of Letter Carriers v. Austin,* 1974, 418 U.S. 264, 282–287, 94 S.Ct. 2770, 2780–2782, 41 L.Ed.2d 745.

■ The constitutional privilege for opinion applies in defamation actions brought by private persons, such as Lewis, as well as those brought by public persons. Restatement (Second) of Torts § 566 (1977), Comment c. *Gertz* draws a distinction between "public" and "private" plaintiffs, and permits states to impose a lesser burden of proof on "private" plaintiffs than on "public" plaintiffs, who must show actual malice before they may recover in a defamation action. 418 U.S. at 345–347, 94 S.Ct. at 3010. But the *Gertz* proof distinction does not affect the constitutional privilege for opinion. An opinion is protected because it cannot, under *Gertz*, be "false." Because a statement must be false to be actionable defamation, Restatement (Second) of Torts § 558(a) (1977), an opinion is simply not actionable defamation. It makes no difference whether the plaintiff alleging the defamation is a private or a public person.

■ The question whether a statement is one of fact or of opinion is one of law. *Information Control Corp. v. Genesis One Computer Corp.,* 9 Cir., 1980, 611 F.2d 781, 783. We therefore review the question ourselves. Our analysis is aided by *Information Control,* where we identified three factors important in determining whether a statement expresses fact or opinion.

First, we said, "it is established that words are not defamatory unless they are understood in a defamatory sense.... Thus, the words alone are not determinative; the facts surrounding the publication must also be considered." 611 F.2d at 783–784. Second, we stated that "even apparent statements of fact may assume the character of statements of opinion, and thus be privileged, when made in public debate, heated labor dispute, or other circumstances in which an 'audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole.'" *Id.* at 784, quoting *Gregory v. McDonnell Douglas Corp.,* 1976, 17 Cal.3d 596, 601, 131 Cal.Rptr. 641, 644, 552 P.2d 425, 428. Third, we discussed the importance of the language itself, noting that "[w]here the language of the statement is 'cautiously phrased in terms of apparency' or is of a kind typically generated in a spirited legal dispute in which the judgment, loyalties and subjective motives of the parties are reciprocally attacked and defended in the media and other public forums, the statement is less likely to be understood as a statement of fact rather than as a statement of opinion." 611 F.2d at 784, quoting *Gregory,* 17 Cal.3d at 603, 131 Cal.Rptr. at 645, 552 P.2d at 429.

■ Discussing the three factors in turn, we think "the facts surrounding the publication" weigh in favor of opinion, rather than fact. Lewis argues that the TIME article was held out as a factual account, not belief or opinion. But the article did not purport to dissect in detail Lewis's qualifications or lack thereof to practice law. It was a critical overview of the United States legal profession. Lewis is mentioned on the article's fifth full page in a section clearly meant to particularize the story's point that there may be good reason for Americans to be cynical about lawyers.

Lewis places too much emphasis on the second *Information Control* factor. By reading our opinion there literally, he would have us hold as factual any statement made outside the context of a "public debate" or "heated labor dispute." This case, however, presents one of the "other circumstances" of which *Information Control* spoke. The TIME article did not vilify Lewis through "epithets" or "fiery rhetoric," but "efforts ... to persuade others" do not always have

to be so emotional. The point of the subsection of the article that mentions Lewis is that while lawyers are "swift to crack down on anyone threatening to cut 'fees or reduce business," they are slow to discipline their own "shady practitioners." But the section is written broadly, with few factual details supporting its premise. We read the inference that Lewis is so shady that he is subject to bar discipline as an attempt by TIME to impart some specificity to its charges against the profession. It is, in short, an effort to persuade readers first, that Lewis should be disciplined, and second, that lawyers in general should be faulted for permitting attorneys like Lewis to practice without censure.

With regard to the third *Information Control* factor, it is true that the TIME article was not part of a "spirited legal dispute" in which the "parties are reciprocally attacked and defended." Lewis had no chance in the article to respond, no one spoke on his behalf, and there is no evidence that he publicly responded in another medium. But *Information Control* does not state that expressions of opinion may be found only in an *exchange* of views, and neither do we. Such a doctrine would too often deny constitutional protection for opinions expressed in the news media, considering "society's interest in 'uninhibited, robust, and wide-open' debate on public issues." *Gertz*, 418 U.S. at 340, 94 S.Ct. at 3007, quoting *New York Times Co. v. Sullivan*, 1964, 376 U.S. 254, 270, 84 S.Ct. 710, 721, 11 L.Ed.2d 686. On the other hand, we think the term "shady" is by definition "cautiously phrased in terms of apparency." According to Webster's New International Dictionary Unabridged (2d ed.), it means in this context "equivocal as regards merit or morality; unreliable; disreputable." The inference that Lewis's morality or legal abilities were doubtful, or that he was unreliable and disreputable, is a broad, unfocused, wholly subjective comment, not the kind of factual expression for which the Constitution permits liability to be imposed.

### C. The Nature of the Opinion.

Lewis argues that even if the negative inferences arising from the article are opinion rather than fact, they are not constitutionally protected because they accuse him of dishonesty or criminal conduct. Several courts have indeed said that the constitutional protection of opinion is not so broad as to cover accusations of dishonesty or criminal conduct, when they are understood as such. *E.g., Cianci v. New Times Publishing Co.*, 2 Cir., 1980, 639 F.2d 54, 62–65; *Gregory v. McDonnell Douglas Corp., supra*, 17 Cal.3d at 604, 131 Cal.Rptr. at 646, 552 P.2d at 430 (dictum); *see Rinaldi v. Holt, Rinehart & Winston, Inc.*, N.Y., 1977, 42 N.Y.2d 369, 382, 397 N.Y.S.2d 943, 951, 366 N.E.2d 1299, 1307. Their reasoning is that such "opinions" are too laden with factual content to be protected as belief. *Cianci*, 639 F.2d at 63. For example, the article in *Cianci* was said to express the "opinion" that a certain elected official had raped a woman, then paid her off to make sure he was not prosecuted. The Second Circuit stated:

> The charges of rape and obstruction of justice were not employed in a 'loose, figurative sense' or as 'rhetorical hyperbole'. A jury could find that the effect of the article was not simply to convey the idea that Cianci was a bad man unworthy of the confidence of the voters of Providence but rather to produce a specific image of depraved conduct—committing rape with the aid of trickery, drugs and threats of death or serious injury, and the scuttling of a well-founded criminal charge by buying off the victim.... To call such charges merely an expression of 'opinion' would be to indulge in Humpty-Dumpty's use of language. We see not the slightest indication that the Supreme Court or this court ever intended anything of this sort and much to demonstrate the contrary.

639 F.2d at 64.

While the TIME article did not accuse Lewis of any crime, readers may indeed have inferred from the "shadier practitioners" phrase and from the mention of the judgments against him that he was dishonest. The district court held that the rule of

*Cianci* and *Gregory* did not apply because TIME made no "factual assertion" that Lewis was dishonest. Dist.Ct.Op. at 20, n. 20. The article merely laid out for its readers the facts from which the allegedly derogatory inference could be drawn.

We find instructive the Second Restatement's codification of the common law and constitutional privilege for opinion, found in § 566 (1977). It states,

> A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion.

Comment c elaborates on the breadth of the constitutional protection, concluding that "[a] simple expression of opinion based on disclosed or assumed nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is." The rule derives from the statement's effect on the reader. If an expression of opinion follows from nondefamatory facts that are either stated or assumed, the reader is likely to take the opinion for what it is. Indeed, the reader is free to form another, perhaps contradictory opinion from the same facts. *See Rinaldi, supra,* 42 N.Y.2d at 381, 397 N.Y.S.2d at 950, 366 N.E.2d at 1306; *National Association of Government Employees v. Central Broadcasting Corp.,* Mass., 1979, 379 Mass. 220, 396 N.E.2d 996, 1000. But when the opinion derives from unstated or unassumed facts, the reader can only presume that the publisher of the statement is asserting the facts to support the opinion as well. Thus, the effect is the same as if the unstated facts were specified, and the publisher risks liability if they are defamatory.

TIME argues that the inference that Lewis was a dishonest "shady practitioner" falls within § 566 because it is based on stated nondefamatory facts: the judgments against Lewis for fraud and for malpractice. We agree. The fact that California has not adopted Restatement § 566 does not compel us to disregard it, as Lewis urges. (*But see* discussion of § 566 in *Okun v. Superior Court,* Cal., 1981, 29 Cal.3d 442, 451–452, 629 P.2d 1369, 1380, 175 Cal.Rptr. 157, 162–163.) We deal here with a privilege that derives from the Constitution, not from state law. Thus, we may look for instruction to the Restatement, to the Second Circuit's opinion in *Cianci v. New Times Publishing Co., supra,* and to the New York Court of Appeals' decision in *Rinaldi v. Holt, Rinehart & Winston, Inc., supra.*

The court in *Cianci* refused to apply § 566 to protect the statements at issue there, but those statements were of a different nature from that of those in the case before us. We assume for purposes of analysis only that TIME's opinion that Lewis was perhaps dishonest is akin to *New Times'* opinion that Cianci violated the law. But the criminal accusations in *Cianci* had not been proven; indeed, the plaintiff had never been brought to trial for the rape of which the article accused him. Under those circumstances, the Second Circuit observed that the disclosure of the "factual background" does not "protect as opinion a direct accusation of criminal conduct." 639 F.2d at 65. It cited *Gregory, supra,* and *Rinaldi, supra,* with approval and characterized them as stating "that opinions may support a defamation action when they convey *false* representations of defamatory fact, even though there is no implication that the writer is relying on facts not disclosed." *Id.* (emphasis added).

*Rinaldi* concerned a book alleging that a state court judge was "probably corrupt" and so incompetent that he should be removed from office. In discussing the statement that because the judge was incompetent, he should be removed from office, the court cited § 566 and said, "Opinions, false or not, libelous or not, are constitutionally protected and may not be the subject of private damage actions, provided that the facts supporting the opinions are set forth." 42 N.Y.2d at 380, 397 N.Y.S.2d at 950, 366 N.E.2d at 1306. Because the article's author "set forth the basis for his belief that [the judge] is incompetent and should be

removed," the statement was protected. 42 N.Y.2d at 381, 397 N.Y.S.2d at 951, 366 N.E.2d at 1306.

■ We believe that § 566 properly applies to the facts of the case before us. The TIME article did set forth the facts underlying its "opinion" that Lewis was a "shady practitioner": the judgments against Lewis for fraud and for malpractice. There is no question that those judgments exist. It may be illogical to say that an "opinion" is either "true" or "false." *See, e.g.,* the Court's statement in *Gertz* that "there is no such thing as a false idea." 418 U.S. at 339, 94 S.Ct. at 3007. But the "facts" on which an opinion is based are either true or false. When they are true, and when they are stated, the first amendment shields from liability an opinion that arises from them.

Our decision here is supported also by *Orr v. Argus-Press Co.,* 6 Cir., 1978, 586 F.2d 1108, in which the plaintiff claimed defamation by a newspaper's account of an indictment that charged him with securities law violations. In journalistic shorthand, the newspaper reported that the indictment charged him with defrauding and swindling investors. The court cited § 566 in support of its alternative holding that "to the extent the allegedly libelous words constitute an opinion, as opposed to facts, the words are not defamatory." 586 F.2d at 1115. Although the court did not discuss the matter at length, it held that it made no difference that the "opinion" charged the subject with criminal activity because "it is not disputed that the reporter accurately reported the underlying facts concerning Orr's indictment and arrest." *Id.* Therefore the publication's "opinion" about the meaning of the indictment could not subject it to defamation liability.

We hold that in a case such as this, where a publication sets forth the facts underlying its statement of opinion that someone is dishonest, and those facts are true, the Constitution protects that opinion from liability for defamation.

IV. *Demand for Jury Trial.*

■ Finally, Lewis argues that the district judge incorrectly denied his motion for a jury trial on the issue of whether the word "clients" was a material variance from the truth.

Under F.R.Civ.P. 81(c), the federal "rules apply to civil actions removed to the United States district courts from the state courts and govern procedure after removal." The rule further states in relevant part:

A party who, prior to removal, has made an express demand for trial by jury in accordance with state law, need not make a demand after removal. If state law applicable in the court from which the case is removed does not require the parties to make express demands in order to claim trial by jury, they need not make demands after removal unless the court directs that they do so. . . .

Lewis did not request a jury trial before his case was removed from California state court. Under California law, a litigant waives trial by jury by, *inter alia,* failing to "announce that one is required" when the trial is set. Cal.Civ.Proc.Code §§ 631, 631.01. (West 1982 Supp.). We understand that to mean that an "express demand" is required. Therefore, F.R.Civ.P. 38(d), made applicable by Rule 81(c), required Lewis to file a demand "not later than 10 days after the service of the last pleading directed to such issue [to be tried]." Failure to file within the time provided constituted a waiver of the right to trial by jury. Rule 38(d).

Lewis did not request a jury trial until March 17, 1980, nine months after TIME filed its answer, the last pleading on the issue to be tried. Lewis then filed a motion for relief from failure to make a timely demand for jury trial.

■ The district court, in its discretion, may order a jury trial on a motion by a party who has not filed a timely demand for one. F.R.Civ.P. 39(b). That discretion is narrow, however, and does not permit a court to grant relief when the failure to make a timely demand results from an

oversight or inadvertence. *Chandler Supply Co. v. GAF Corp.,* 9 Cir., 1980, 650 F.2d 983, 987; *Mardesich v. Marciel,* 9 Cir., 1976, 538 F.2d 848, 849.

 Lewis argues, however, that the discretion permitted the district court was defined by California state law, not by federal law under Rule 39(b). He relies on *Higgins v. Boeing Co.,* 2 Cir., 1975, 526 F.2d 1004, for the proposition that where state law would have permitted discretionary relief from waiver of jury trial, had the case not been removed from state court, the federal court has the same discretion as the state court to order relief.

There is some reason to believe that the discretion California law permits trial judges in granting relief from jury trial waivers is broader than the discretion we permit under Rule 39(b). *See, e.g., Byram v. Superior Court,* Cal.App., 1977, 74 Cal. App.3d 648, 141 Cal.Rptr. 604; and Cal.Civ. Proc.Code §§ 631 and 631.01. We need not consider the issue, however, because we conclude that Rule 39(b) defined the discretion to be exercised by the district court here.

The *Higgins* case cited by Lewis was an application for a writ of mandamus directing a district court to grant a jury trial in a case removed from state court. The district court judge appeared ready to deny the jury trial under Rule 39(b) because there was no timely formal jury demand on file. 526 F.2d at 1006. The Second Circuit granted the application to the extent that it directed the lower court to consider the question "in the exercise of its sound discretion." *Id.* at 1007. It held that the discretion that New York law provided a state trial judge should be read into the language of Rule 81(c) and applied by a district judge hearing a removed case. The court implied that, even though the New York state law discretion "comports" with Rule 39(b) discretion, it is in fact wider than that provided by the federal rule. *Id.* at 1006 n. 2, 1007.

Lewis argues that *Myers v. United States District Court,* 9 Cir., 1980, 620 F.2d 741, directs that we follow *Higgins* in granting the district court wider discretion to grant relief in cases removed from state court. *Myers,* however, merely recognized that an untimely jury trial request granted by a state court in its discretion *before* the case was removed was valid after removal because it was, in the words of Rule 81(c), a prior demand "in accordance with state law."

We held the jury demand in *Myers* valid because principles of comity and federalism demanded that we respect the prior ruling by the state court. In the case before us, there is no similar prior state court ruling. Rule 81(c) expressly provides that the same federal rules be applied to removed cases as to cases brought originally in federal court. We are not persuaded by *Higgins* that a district judge's discretion should vary, depending on whether the case at hand was removed from state court.

Therefore, because Rule 39(b) does not permit relief where the waiver was caused by oversight or inadvertence, *see Chandler Supply* and *Mardesich, supra,* the district court correctly denied Lewis's motion for a jury trial. Lewis's further argument that it was error for the trial judge to reconsider his earlier ruling granting Lewis's untimely motion for jury trial is meritless.

Affirmed.